May it please the court. I do represent the owner Timber Ridge Escapes which is an LLC formed by Welk Resort to construct new condominium buildings on the Welk Resort campus in Branson, Missouri. TRE is an LLC wholly owned by Welk Resort and that's founded by Lawrence Welk and still managed by Mr. Welk's family. There are four contracts at issue in the case. They're virtually identical. There are AIA contracts that are a cost plus a fee with a not to exceed price. They concern two modest size condominium buildings, they're four stories, and two pad sites for future buildings. The district court entered judgment on March 2nd, 2020 finding in favor of Quality Structures, the general contractor, on both breach of contract and quantum merit theories. As this court is aware those two theories are incompatible when the work at issue is within the contemplation of the contract. The district court recognizing this error reversed the quantum merit judgment but failed to correct its errors with respect to the application of the contract terms to the generally undisputed facts as it relates to the contract performance. The standard of review here is de novo as cited by this court in sports v top rank 954 F3rd 1142. My opponent agrees stating at page 28 of its brief that contract interpretation is a matter of law review de novo. The performance of this these four contracts occurred started in late 2015 and the general contractor, Quality Structures, was terminated on February 6, 2017. Counsel, I'd like to pause a minute on the standard review. Certainly, the interpretation of a written contract is typically for the court and reviewed by the appellate court de novo, but what if you have a situation not uncommon where there's a parties in performing it completely disregarded and the district court has to decide whether to apply one or more terms in a well in this case the district court said wildly deviated from their written contract. That does not strike me as a de novo review situation. Do you have a Missouri case law on that? We cited cases on Pepsi Mid-America versus Harris which is 232 Southwest 3rd. That's a southern district of Missouri case. We also cited this court's holding in Cameo Homes versus Kraus Anderson Construction that's 394 F3rd 1084. Are those cases dealing with a contract that the party signed and then ignored? I couldn't go as far as saying ignored and I also would disagree that the contracts here were ignored. The procedural provisions that you're relying on to reverse the decision were wildly deviated if not ignored. They weren't followed. Well, that was certainly the argument of my adversary that they were ignored, but with respect to the payment or the change in the contract sum, which is really the only issue in the case, they weren't. My question, I'll let you go on with your argument, but do you have authority for we review de novo the question of whether the parties so deviated from the written contract terms that something different has to be done? No, your honor. In fact, I would think that's primarily a clear error question, but at most an abuse of discretion question. I respectfully disagree with that because- I can go do the research and maybe opposing counsel has. I'd like both lawyers to address this from a standpoint of what would the Supreme Court of Missouri, how would the Supreme Court of Missouri review this issue you're arguing? I think that the Supreme Court of Missouri would say that if the contracts are unambiguous, then the court's duty is confined to the interpretation of that contract, which is- Counsel, how can that be? If the parties have performed a different contract than they signed, then why after the fact can one of the deviators say, oh, well, now I don't like the end result, and so I'm going to go back and have you review, apply de novo review to what we initially signed and then ignore it? Well, the extreme deviator in this case was the general contractor. So, let me give you a brief example. That's factual. Yeah, that's factual. That's what I say. If that's an irrelevant question, but we review that de novo, we don't review that de novo. No, and I disagree with that because it's undisputed. So, and what I mean by that is for example, the pay application process. The major cost component of this appeal was based on excavation. So, there were 39 pay applications submitted by quality structures in this case. 31 of them identified excavation as 100% complete by the general contractor. 31 of them identified the lien waiver attached to those pay applications, and the change orders related to excavation that were presented to the district court were never presented to the owner. They were provided to us during discovery after the lawsuit was filed. They were never given to the owner to review, and the district court awarded $1.3 million of those change orders, which by the way, change orders identified information from an expert who said this is a best guess as to how much rock was removed from the project. So, the deviation... Counselor, didn't the district court conclude though that those were actually, what is it, a construction change directive? Wasn't that the court's conclusion? It was, and that is, in my view, error because section 5.25 of the contract, the contract specifically... Why is that question de novo review? Because the application of the contract terms to payment is de novo for the court. So, if it's an unambiguous contract... But the contract has two alternatives, change order and change direction, and the district court said those weren't... You argued change order. The court said no, they were change direction, and you say that's de novo review. That fact-intensive decision by the district court is reviewed de novo, and you got to have better case law than you put in your brief to convince me of that. Well, if the court will just look at the actual document, the document was submitted by the general contractor, and they submitted the change order request. The owner didn't do that. So, they submitted the document, and the court interpreted the change order as a change directive, but for the court's analysis, it doesn't really matter. A change directive and a change order go to the same issue, and that is, can the general contractor prove that it actually incurred the cost? That is a question I have. There's a lot of steps to your argument about the bottom dollar amount in your various argument points. So, are you really just arguing about an evidentiary support or lack thereof for a dollar amount? Is that really what you're appealing here? No. What I'm appealing is the court's award of dollars to the general contractor when the general contractor did not comply with the contract terms. So, as an example, we referenced a site-like change order, which on its face was a change order presented by Quality Structures, and the lawyer for Quality Structures asked at Transcript 1558, he said, now, Quality Structures doesn't seek the entire amount of this change order, correct? Answer is from their representative. We do not. Question, why not? Answer, some of the railing work and the bollards that were closest to the buildings were not installed. Yeah, and that's about $20,000 of the $1.2 million, right? Well, that's an example. So, how does that apply to the rest of it, right? I mean, that seems to me to be a clearly erroneous factual determination by the judge, and that's an easy thing, but it's only $20,000 of the $1.2 million. So, is there any evidence of pervasive problems like this? Yes, and the excavation change orders are an example. So, the court knows a change order is supposed to be presented to the owner before the costs are incurred, right? That did not happen here. That's undisputed. The question is, did the general contractor have some reason to do that? Was there some other reason? No, I think there was a change directive, and the question is, in order to reach that conclusion of law, didn't the judge have to make findings of fact, and aren't those findings of fact subject to review on a clearly erroneous standard? And I know you're going to say no, I'm going to ask why not. Okay, because the contract speaks directly to the issue, and section 5.25 of the contract says that the general contractor is supposed to make accommodation for changes in the plans as the project progresses, but then it says if there's further development of the plans, then it has to be incorporated by cost. It has to be incorporated by change order, which is why quality structures submitted those change orders after the fact, I believe, because it didn't comply with 5.25 unless they did, which then goes to the change order analysis itself, and providing these change orders during discovery does not meet the requirements of the contract. So our argument is limited to, look, please look at the contract and apply those contract principles to these undisputed facts. As the district court pointed out, there's a middleman missing here, the architect, who would have duties to both sides to make the contract process be applied fairly, and the owner now takes over the architect's duties and entirely in the owner's interest proceeds ahead, ignoring some requirements and now enforcing others. This can't be de novo review. Well, I respectfully disagree, and I'll give you another example. So if I was a general contractor and I asked and you agreed with me to build an extra room on your house, Judge, and I told you it was going to cost $25,000, and I built that room, and then after I was done with the room, and a year later after I built it, I sent you a change order or an invoice and said, oh, it costs an additional $75,000, please pay this, you would probably object to that. So whether there were issues with the party's performance, which by the way, 4.3.11 says the parties aren't to consider unjust enrichment or the variance from the terms of the agreement, they have to follow the contract regardless, and that's the If they gave 31 pay applications, which said I've been paid in full for excavation, and then after the fact, a year after the fact, they give you $1.4 million in change orders for excavation, you might think that you have been taken advantage of. So that's the issue. I thought the court found that all the extra excavation was approved outside the contract process by the owner. No, no, there was a change in the site plan. There was a change in the site plan, which of course the contract requires the general contractor to then say, oh, there's going to be increased cost in this process, so here's the change order proposing the additional cost associated with that. So if you're finishing excavation in 2015, Judge, and then you send the change orders for that same work two years later, that's the real question. So, and remember the change orders that were submitted say this is an estimate, which violates the terms of proving actual cost. So that's the point. They didn't follow the rules here, and the owner is not in the position to know what additional cost there is associated with this additional work. If the court says there were post-termination change order requests, there was no final accounting, that was a result of wrongful termination, and then TRE requested this additional work, and QRS performed it. That's completely not, you can't find that process in the contract documents. That is a process in the contract documents. You can do the additional work if you do not believe that additional cost is associated with it, and they did a change order on excavation asking for additional time, and they did it appropriately. They asked the owner for additional time, and the owner signed off on it, and they moved forward. In that change order that was signed and appropriately requested, there was no request for additional cost. I'm telling you this additional cost was an ambush at the end of the project after termination, and it doesn't comply with the contract, and we're simply asking the court. But the termination was wrongful. But that doesn't excuse the moving party from substantial compliance for work performed or incurring additional cost. Remember this is a cost plus contract. What happens after a wrongful termination is not governed by the four corners of the contract that was wrongfully terminated. Well, then nothing should be accepted by the district court if it's after the termination. It shouldn't have been provided in the first place. It didn't occur during the performance. A change order under the contract can only occur under the terms of performance. After termination, there should be no change order. There should be nothing other than a request for a final accounting. Well, except the court thought what was done after the wrongful terminated was approved more work. And I think that's where the court committed error, and it acknowledged the error that committed by the quantum. That sounds to me like factor, not lawyer. Well, I agree that facts are important to determine how the contract was breached, but the facts here are undisputed. There's no factual dispute about when these change orders were presented or how much they were or that they were based on with the contract. I thought your argument was about one of your points is they didn't submit evidence of the supporting the amount the court awarded. Well, that's true too, but if you read anything, don't read anything else. Read Dwight Clamor's, the representative of quality structures cross-examination where he admits when he submitted the pay applications, he didn't review the actual cost associated with the work he was billing for. Undisputed. He didn't do it. He did a cost. He did a percentage of completion of work and never compared it to the costs, which is required under Article 12 of the contract. I thought the district court found that was a reasonable approach to the damages. That's not a reasonable approach because the costs were submitted. Okay, so now what's our standard review for that one? It's the same because the contract says that costs have to be submitted and then the only thing you have to look at is whether they submitted the cost to the district court to consider and Mr. Clamor's admitted he did not do it when he prepared the pay applications. He also didn't do it in the two years of litigation that ensued after up to the time he testified at trial. Let's hear from Mr. Ash. May I please the court? My name is Richard Ash. I represent quality structures of Arkansas. Quality structures have been building these types of tourist developments, timeshare condominiums for since 1990. They know how to get this done. They know how to do it correctly and they use the same kinds of contracts over and over again. They used them with wealth when we first built condominiums for them and the contract provisions that Mr. Wade is referring to don't exist. There is not a provision that says the contractor, quality structures, has some duty to go get a change order. The contract put the responsibility for administering this contract in the hands of the owner. It should have been the architect but the owner changed those terms. We signed the contract and that's how it was and they had a heightened duty to act like an impartial body and to make sure that their own obligations to pay quality structures were enforced. What they decided to do is they've added provisions to this contract that don't exist. It isn't our burden to provide them notice. There's no provision in this contract that says if TRE, the owner and contract administrator, issue a brand new set of plans adding extra work to the original scope, that quality structures has an obligation to then do a bid and notify them of that. That's not our obligation. If you look at 733 construction change directives and that's what those new plans were and again undisputed those plans were issued by TRE's architect at the behest of TRE's instruction and if you look at 733 the only obligation that we have is to promptly proceed with that work which the trial court finally did and to then calculate our cost in accordance with 733. If you look at the fundamental basis for that is because the plans themselves are written instruction adding extra work that we have to prepare and the fact that they change the scope is what triggers the payment process. If you go to article 6 of the contract it says if there's a change in scope then you go to 733. If you look at 7-2 change orders it says calculate this in 733. You go to 731 calculate this with 733 and when you get to 733 what does it say? It says if unit prices are part of the contract documents and they are in this case that's how we bid the work. That's how everyone bids excavation work by the cubic yard. You do it as a unit price. You don't do it the amount of machines you break down, the hammers that you break down, and the labors. You do it as a unit price. That was part of the contract documents. The parties agreed to that unit price of $75 at the start. That's how they paid for the original scope of excavation. They also agreed to it separately with the change order making it part of the contract documents a second time. So what we have in this scenario is new plans are issued by the owner and contract administrator. They change the scope. You look at the contract where it says what do you do when the change of when the scope is changed. You go to 733 and that's what we did. Were there unit prices already agreed to for excavation? The answer is yes and at that point the analysis is done. Quality structures followed the contract to a T with respect to unit pricing at $75 agreed to by parties times the quantity prepared by a civil engineer who does this very thing for a living. He does it for every contractor in southwest Missouri. That's how everyone bids their jobs. That's how everyone's paid their jobs. The idea that TRE didn't agree to a $75 cubic yard is just an excuse to say well I guess we don't have to pay you. Well no one gets paid on the How many hours did it take? Everyone gets paid on the unit price. TRE agreed to the unit price. The quantity was calculated by an engineer who does this for a living and the standard for these damages is speculation. There's no doubt that Mr. Howland's expert report quantified with the industry standard to a reasonable degree of certainty the quality of this work. That's more than beyond speculation and there's no doubt that Mr. Ash as to some of the other the unpaid change order requests if you shift away from just the excavation so the unpaid change order requests unpaid applications there are TRE's argument is that there was just nothing to back those up and the district court says well there was sufficient documentation for these. Can you help us understand a little bit more of how that worked because I wasn't quite sure exactly what that specific documentation was particularly in light of Mr. Wade's argument that there was basically nothing. Right okay and I have a yes I will address that so there was approximately $500,000 worth of other change order requests $400,000 worth of which were submitted prior to termination another hundred thousand were done after termination. There's no question of fact in the record that all of those were changes in scope so we don't have a unit price for that work so where do you go you go to 736 of the construction change directive and it says or you can look on the change order uh provision it says that you need to provide the labor which in this case is the number of hours by the agreed upon rate you need to provide subcontractor invoices uh if you have a subcontractor say an HVAC individual do some work you got to provide their invoice and you provide any material cost what was the cost of material you used and what the court found was that in every circumstance across those 24 separate change orders we complied with 736 because they included the number of hours by our billable rate they included the amount and quantity and price of materials and they included copies of either receipts from subcontractors that required receipts from material suppliers themselves so the idea that we didn't provide you know and I listed in detail what the testimony was documents were and so when you're talking about more than two dozen of these and the only one Mr. Wade or TRE challenges is the site lighting for building eight and the post racks so let me just address those two really quickly when you look at that change order for the site lighting it was originally for eighty thousand dollars we got 68 we got 68 because Mr. Klamers testified that we didn't do twelve thousand dollars worth of work the amount awarded was entirely consistent with the testimony the evidence what you're not being told is that the original change order was for more than the 68 that we were we were awarded finally the only other change order that's even been mentioned by TRE is the post racks and when you look at the testimony what the court found for every one of these change orders was that they were said they were pursuant to written authorization in the form of supplemental instructions or new written plans and the fact is that that was one mistake in this case which is to say you go back and you look at the record and it is apparent that the post wraps on that one building which was about twenty thousand dollars was actually done at the oral request of TRE so we're talking 1.8 million dollars worth of change orders 1.3 of them comply with the unit price the rest of the five hundred thousand dollars completely comply with seven three six giving exactly what is required and if it didn't you can be assured that TRE would have mentioned it the two they mentioned site lighting is irrelevant for the reasons I just explained and the only one that has any traction is the post wraps it's just twenty thousand dollars and we're talking about a five million dollar judgment here if I adequately address that question I would just like to jump quickly to the pay applications because what's fundamental what's fundamentally wrong about the analysis that's being or the story being told you the interpretation of this contract is that in large construction projects where 200 to 500 to 700 thousand dollars of work is done every month and you might have 50 employees there and you might have a dozen subcontractors there no one there's a reason why chapter 12 exists there's a reason why it specifically instructs the parties to determine to take the GMP break it down by category put it into the pay app and if there is a pay app example at separate addendum 12 13 and 14 and this explains the process and the process I think what is payable under this contract is better described as the basis for payment is the guaranteed max price first and foremost subject to a final accounting and the security the TRE has for that is the 10 percent retainers they get to keep until you get to the final recounting so under Missouri law well under the pay app itself it says if the owner signs this it's certification that the money is owed if you look at the case law um my apologies to the court heart v sun and hauling inc versus mcafee it's a Missouri appellate court from 1986 it quote in a construction contract which provides for progress payments as the work proceeds certification of payment is conclusive on the party so when you look at the pay applications in this case what happened here we submitted 38 of them before we wrongfully terminated and those 38 were certified 37 of them were paid under Missouri law and under the pay application itself that is conclusive evidence this additional step that somehow we have a burden of tying every day a dollar that we spent to every line item of every application that's already been paid is a misnomer it doesn't exist the process is for payment on the original scope of work not extra work all those change orders are for extra work and that's 733 and 61 but when you're on 12 or article 12 the process is what percentage of work did you do this month for woodworking for machines for finishes for drywall and then you take that and you multiply it by the amount of the bid that gives you the amount due minus retainage of 10 under Missouri law that's conclusive so there really is no additional step there's nothing that tre didn't get from quality structures all the structures followed the contract and did exactly what it was supposed to do with respect to billing the pay applications that exactly was supposed to do with respect to paying or to billing the excavation and that exactly was supposed to do when it was billing the rest of the change order requests and with respect to the court can i ask one follow-up question on that mr ash the um the guaranteed maximum price um that wasn't that was a guaranteed maximum but not a guaranteed price for for quality structures correct it is and let me address that because i think that was the the one mistake the when the court said these parties didn't quite understand the percentage complete there was there's something inherent in that and i think the way you look at that is cost plus and what's here keeps saying is well before you get any money you have to prove your basis that's not how this works what happens is you bill for all the original scope as a percentage of work done you get to the end you bill your final payment saying i completed all the work i'm entitled to all the money and what do you do with that you have to provide then your final accounting so we start with is your work you get paid 90 of the gmp you do a final accounting for last of it and in connection with that at that point and only that point do you provide a summary of all your costs that's what mr page did we have so in this case though didn't the district court say it was just a guaranteed maximum i get this this to me is relevant for the reformation of the dollar amounts that were just kind of shifted up from the original erroneous dollar numbers to a reformed total dollars and it seemed to me that the district court said well i'm just going to give that entire difference up to the new gmp but it seemed to me to do that that's implying that you were it's not just a guaranteed maximum it's an it's actually a guaranteed price for quality structure so are you saying that that's really is the understanding that it's the maximum and the guaranteed amount because of the way you calculate the progressive payment process i just think it's the order in which that happens so you build up to the guaranteed max and then that's subject to a revision based on the final accounting but with respect to the reformation the court did not simply grant us the difference between what was on the original exhibit e-bid and the gap that was put into the schedule values we went through every one of those applications and we said okay if the original woodworking estimate was eight hundred thousand dollars and in payout seven it says five so it would have it would have said five hundred thousand for that category and all of the payouts for building nine the actual number was eight hundred thousand all he did was go in and say okay well on this payout you did fifty percent of the work i'm going to multiply that by 800 the actual number not by 500 and that's how you got to each one of these this was not just to give them the difference in price because they're entitled to the to the max we've never asked for any money we did not perform work for and the court didn't didn't grant us any money that we didn't perform work for at its written instruction did that answer your question thank you um i guess i'll just uh end by saying that um you know there's 47 pages of factual findings in this case all of which support the story that my client's been telling from the beginning and none of which supports anything that tre has told you this standard review is a deference to what child court did in this case you're to ignore any contrary facts and inferences and their appeal is based on just that contrary evidence and inferences that are not allowed thank you very much your honor do i have any additional time uh i'll give you a minute for a vote sure i just want the court to leave the court with one thought this is judge uh duane clamber's testimony is there anything the court can look to to determine what the actual costs are as it relates to any particular pay application that was submitted by quality structures answer we didn't assign costs to pay applications they're only progress payment application and those were done on percent complete so with respect to the pay applications that are unpaid and you know there are unpaid pay applications don't you answer yes you have not quality structures has not taken the time to determine what the actual costs are with respect to those unpaid pay applications true answer we didn't assign cost to any pay application these are progress applications so that's a clear violation of 12.16 which says you have to submit a pay application which is the lesser of progress payments or the actual expenses incurred but as a practical Mr. Wade isn't that what happens at the to be the lesser of the actual expenses incurred up to that point or the progress performance 12.1.6 of all of the contracts and that's the way all of these contracts are supposed to work by the way because the owner is not supposed to pay more than it is owed under that and as the court judge kelly noted it would be a fixed price contract if it were not so because the owners only afford has to pay the actual cost and so the practical problem here is time time time cost thank you all for listening okay so well okay it's been thoroughly briefed and well argued and it's complex we'll take it under advisement